UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>　　　Petitioner, )<br> )<br>v. )<br> )<br>**CLYDE FANNING,** )<br>　　　Respondent. ) | Civil Action No. 10cv10543-NG |

GERTNER, D.J.:

ORDER OF COMMITMENT
July 14, 2010

The government seeks the civil commitment of federal prisoner Clyde Fanning on the grounds that he "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d).

Mr. Fanning, who is currently incarcerated at FMC Devens, was sentenced to 60 months imprisonment by the U.S. District Court for the District of Idaho on June 26, 2006, after he pleaded guilty to a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Although Mr. Fanning was scheduled to be released from custody on April 3, 2010, his release was stayed by the government's initiation of these proceedings. See 18 U.S.C. § 4246(a).

I held a hearing in this matter on July 7, 2010, in accordance with 18 U.S.C. §§ 4246 and 4247(d). The government called one witness at this hearing -- Dr. Shawn Channell, a forensic psychologist at FMC Devens and the chair of the Risk Assessment Panel that evaluated Mr. Fanning. Mr. Fanning elected not to call any witnesses. This order sets forth my findings of fact and conclusions of law based on the evidence, testimony, and argument presented at the July 7 hearing.

Before Mr. Fanning may be civilly committed, I must find by clear and convincing evidence that (1) he is presently suffering from a mental disease or defect, and (2) this mental disease or defect creates a substantial risk that he will injure other persons or property if released.  18 U.S.C. § 4246(d); see also United States v. Thompson, 45 F. App'x 4, 4-5 (1st Cir. 2002).

As I indicated at the July 7 hearing, I reject Mr. Fanning's position that I must also find by clear and convincing evidence that there is no suitable state facility willing to assume responsibility for his custody, care, and treatment.  (Mot. to Require Gov't To Prove Absence of Suitable State Facilities by Clear and Convincing Evidence Admissible Under the Rules of Evidence, document #17.)  The First Circuit has squarely rejected this argument, albeit in an unpublished opinion.  Thompson, 45 F. App'x at 4-5.  Even if I am not bound to follow this decision, see Tyree v. Weld, Nos. 93cv12260-NG, 93cv12725-NG, 2010 WL 145882, at *11 (D. Mass. Jan. 11, 2010) (discussing the precedential effect of an unpublished opinion), I nevertheless find its reasoning persuasive.  Under the plain language of section 4246(d), a court is required to civilly commit the detained person if it "finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."  The statute says nothing about the court making any finding regarding the availability of state facilities.  Instead, investigation of the suitability of state facilities is entrusted by the statute to other officials.  The director of the facility where the individual is hospitalized must certify "that suitable arrangements for State custody and care of the person are not available" at the initiation of the civil-commitment proceedings.  18 U.S.C. § 4246(a).  After

a court has determined that the detained individual is mentally ill and presents a substantial risk of injury to other persons or property, the Attorney General must make reasonable efforts to cause the state where the individual is domiciled or was tried to assume responsibility for his custody, care, and treatment.  Id. § 4246(d).  The statute, on its face, does not call for a court to make any factual findings regarding these interactions between federal and state authorities.  Furthermore, I reject Mr. Fanning's argument that such a requirement must be read into the statute in order for it to comply with the dictates of the Due Process Clause and to avoid unconstitutionally trampling on the powers reserved to the states by the Tenth Amendment.[1]

I find by clear and convincing evidence that Mr. Fanning is suffering from a mental disease or defect -- namely, schizoaffective disorder, bipolar type.  Dr. Channell's diagnosis that Mr. Fanning suffers from this mental illness is well supported and was essentially unchallenged by Mr. Fanning's attorney at the hearing.

The key question at the July 7 hearing, then, was not whether Mr. Fanning suffers from a mental illness but rather whether that mental illness creates a substantial risk that he will injure other persons or property if released.  Based on Dr. Channell's testimony and the exhibits introduced at the hearing, I find by clear and convincing evidence that there is a substantial risk that Mr. Fanning's schizoaffective disorder will cause him to inflict bodily injury on another person if he is released.

Mr. Fanning has a history of violence, including convictions for robberies committed at gunpoint and an assault of another individual with a knife.  Dr. Channell testified that in his

---

[1] Although I denied Mr. Fanning's pre-hearing motion insofar as it sought a judicial finding regarding the availability of suitable state facilities, I granted his unopposed request that the Federal Rules of Evidence govern the hearing.

expert opinion, Mr. Fanning's violent behavior is linked to his schizoaffective disorder. He reasonably based this opinion on evidence that Mr. Fanning becomes volatile and violent when he fails to take the medication prescribed for his mental illness.

Unfortunately, Mr. Fanning has a history of not complying with his medication regimen and relapsing into substance abuse and criminal conduct when he is released from institutionalized settings. For example, his most recent offense occurred only two months after he was conditionally released from a prior term of civil commitment under section 4246. At the time of the offense, he had reportedly stopped complying with his medication program. At the present time, he shows little insight into his mental illness. He believes that he suffers not from a mental disease, but instead a "spiritual imbalance" that should be treated through means other than medication. Without further treatment and an appropriate plan for post-release care, it appears highly likely that Mr. Fanning would suffer yet another relapse.

Furthermore, Mr. Fanning's current release plan is especially troubling: If released today, he plans to take a cross-country bus to Idaho and live with his mother, the victim of his most recent offense. Mr. Fanning admits that he robbed his mother at gunpoint on November 1, 2005. (Presentence Investigation Report at 4-5, United States v. Fanning,, No. 2:05CR240-001-N-EJL (D. Idaho) (Trial Ex. 4).) Even more troubling, the officers who arrested Mr. Fanning for this offense heard him say, "You guys are lucky you found me . . . I was going to gut my mom like a pig and cut her throat." (Id. at 4.)

Thus, I conclude that there is clear and convincing evidence that Mr. Fanning would pose a substantial risk of bodily injury to his mother or others as a result of his mental illness if he were currently released. Without a sustained regimen of antipsychotic medication, there is a

significant risk that Mr. Fanning will act violently, and there is a substantial probability that he will stop taking his prescribed medications if he is removed from a structured and monitored environment.

With further treatment, however, Mr. Fanning may potentially become eligible for release in the near future.  Section 4246(e) envisions precisely this possibility.  If I later find by a preponderance of the evidence that Mr. Fanning has recovered from his mental illness to such an extent that his release would no longer create a substantial risk of injury to other persons or property, then I must order his release.  18 U.S.C. § 4246(e)(1).  I may also order his conditional release under a regimen of medical and psychological treatment tailored to alleviate such risk. Id. § 4246(e)(2).  I will structure the order in this case to make certain that there are regular reviews of Mr. Fanning's condition.

Accordingly, the Court **ORDERS** as follows:

1. As stated at the July 7, 2010, hearing, Mr. Fanning's Motion to Require Government To Prove Absence of Suitable State Facilities By Clear and Convincing Evidence Admissible Under the Rules of Evidence (**document #17**) is **GRANTED** insofar as it sought to apply the Federal Rules of Evidence to his civil-commitment hearing and is **DENIED** in all other respects.

2. Mr. Fanning's Pro-Se Motion for Writ of Habeas Corpus (**document #6**) is **DENIED** since it has not been pursued by his appointed counsel.

3. Mr. Fanning is committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246(d).

4. The Court intends for Mr. Fanning to be conditionally released under an appropriate treatment regimen pursuant to 18 U.S.C. § 4246(e)(2) as soon as practicable.

5. The Bureau of Prisons (BOP) shall report on Mr. Fanning's status within three months of the date of this Order.  In particular, the BOP shall report whether it believes Mr. Fanning may be eligible for conditional release under section 4246(e)(2).

**SO ORDERED.**

**Date:   July 14, 2010**          */s/ Nancy Gertner*
                                    **NANCY GERTNER, U.S.D.C.**